THOMAS F. McCARTY v. NEW YORK LIFE INSURANCE COMPANY.

December 16, 1898.

Nos. 11,349—(129).

Rescission of Contract of Life Insurance for Fraudulent Representations of Agent—Stipulation in Application.

In an action to rescind a contract of life insurance on the ground of the oral fraudulent representations of the insurer's agent who took the application as to the terms of the policy, which the insured, relying on the representations, did not read until six weeks afterwards, when he for the first time actually discovered the fraud, held, that the fraudulent

representations constituted a ground for rescission, although the policy provided that no statements, promises or information made or given by the person soliciting or taking the application for a policy should bind the company, or affect its right, unless reduced to writing and presented in the application to the officers of the company at the home office.

### Same—Questions for the Jury.

Also, that, upon the evidence, the questions whether the agent made the alleged false representations, and, if so, whether the insured had lost his right of rescission by negligence and unreasonable delay in not sooner discovering the fraud, were for the jury.

### Same—Negligence of Insured.

Also, that the fact that the insured may have been negligent in relying on the representations of the agent, without examining the application and policy, would be no defense to an action for rescission.

### Same—Rescission—Part Performance.

Also, that, when the right to rescind a contract springs from subsequently discovered fraud, the defrauded party does not lose his right to rescind because the contract has been partly performed, and the parties cannot be fully restored to their former position.

Appeal by the defendant from the order of the district court for Waseca county, Buckham, J., denying its motion for a new trial. Affirmed.

*Edwin A. Jaggard*, for appellant.

If a person is defrauded and intends to rescind his contract, he should do so immediately. Oakey v. Cook, 41 N. J. Eq. 350; Brown v. Mutual, 32 N. J. Eq. 809; Jennings v. Broughton, 5 De Gex, M. & G. 125. What is a reasonable time, when the facts are not disputed, is a question of law for the court. Leaming v. Wise, 23 P. F. Smith (Pa.) 173. See Barton v. Simmons, 14 Ind. 49; American v. Neiberger, 74 Mo. 167; Rolling Mill v. Indianapolis, St. Louis, Fort S. & W. R., 120 U. S. 256; Cronk v. Cole, 10 Ind. 485. The evidence of fraud must be clear, precise and indubitable, otherwise it should be withdrawn from the jury. Pennsylvania v. Shay, 82 Pa. St. 198; Hoffman v. Bloomsburg, 157 Pa. St. 174, 197. See McCall v. Bushnell, 41 Minn. 37; Stine v. Sherk, 1 W. & S. 195; Miller v. Smith, 9 Casey, 386; Martin v. Berens, 67 Pa. St. 459; Im-

provement Co. v. Munson, 14 Wall. 442; Hall v. Stevens, 116 N. Y. 201; Johnson v. Merry Mount Granite Co., 53 Fed. 569.

The common law does not afford to everyone indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information. 2 Kent, Com. 484; 1 Chitty, Cont. 681. A contractor must stand by the words of his contract and, if he will not read what he signs, he alone is responsible for his omission. Upton v. Tribilcock, 91 U. S. 45; Jackson v. Croy, 12 Johns, 427; Lies v. Stub, 6 Watts, 48; Farley v. Bryant, 32 Me. 474; Coffing v. Taylor, 16 Ill. 457; Staplyton v. Scott, 13 Ves. 425; Alvanley v. Kinnaird, 2 M. & Gord. 7; Chicago, St. P., M. & O. Ry. Co. v. Belliwith, 83 Fed. 437; Fuller v. Madison, 36 Wis. 599; Wheaton v. Fay, 62 N. Y. 275; Germania v. Memphis, 72 N. Y. 90; Hill v. Syracuse, 73 N. Y. 351; Jenkins v. Clyde, 82 Iowa, 618. See also Johnson v. Maine, 83 Me. 182; Cobb v. Covenant, 153 Mass. 176; Mechanics v. Thompson, 57 Ark. 279; St. Louis v. Weakly, 50 Ark. 397; Cuthbertson v. North, 96 N. C. 480; Walker v. State, 46 Kan. 312; New Albany v. Fields, 10 Ind. 187; May, Ins. §§ 183, 185, 156; Reeve v. Phœnix, 23 La. An. 219; Southern v. White, 58 Ark. 277; Sanger v. Dun, 47 Wis. 615; Ryan v. World, 41 Conn. 168.

A contract cannot be rescinded by one party for the default of the other, unless both can be put in statu quo as before the contract. Stevens v. Hyde, 32 Barb. 171. This doctrine is applied to a rescission on the ground of fraud, as well as to any other rescission. Buchenau v. Horney, 12 Ill. 336; Collins v. Townsend, 58 Cal. 608. The remedy of the plaintiff is for compensation, and not for restitution. Bigelow, Frauds, 434.

*John Moonan*, for respondent.

The rule which disallows parol evidence to contradict or vary a written instrument has no application in respect to fraudulent instruments attacked as illegal and void. 2 Phillipps, Ev. 688; 1 Greenleaf, Ev. § 284; Cooper v. Finke, 38 Minn. 2; C. Aultman & Co. v. Olson, 34 Minn. 450; Frohreich v. Gammon, 28 Minn. 476; Miller v. Sawbridge, 29 Minn. 442; Albany v. Burdick, 87 N. Y. 40; Gardner v. Trenary, 65 Iowa, 646. If a party's own wrongful

act has brought another into peril, he is not at liberty to impute the consequences of his act to a want of vigilance in the injured party, when his own conduct and untruthful assertions have deprived the other of that quality, and produced a false sense of security. Eaton v. Winnie, 20 Mich. 156; Erickson v. Fisher, 51 Minn. 300; Redding v. Wright, 49 Minn. 322; Bingham v. Bernard, 36 Minn. 114; McKinney v. Harvie, 38 Minn. 18. A party guilty of fraud is to be charged with such damages as have naturally and proximately resulted therefrom. Suydam, Sage & Co. v. Watts, 4 McLean, 162; Benton v. Pratt, 2 Wend. 385.

MITCHELL, J.

The evidence either conclusively established or reasonably tended to prove the following facts: One Wood was the agent of the defendant to solicit and take applications for life insurance, and, if accepted by the defendant, to deliver the policies therefor and collect the premiums. Wood solicited the plaintiff to take a policy, stating to him the character and terms of the policy which he was "selling." Plaintiff agreed to take a policy for $5,000, of the kind and terms described by Wood. Thereupon Wood filled out an "application," and presented it to plaintiff for his signature; falsely representing to him that it was an application for a policy of the character and terms which he had described. Plaintiff signed the application, without reading it, in reliance upon these representations of Wood. When the policy arrived, Wood delivered it to plaintiff, falsely representing to him that it was of the character and terms previously described and agreed upon. In reliance upon these representations, plaintiff accepted and receipted for the policy without reading it, and gave his negotiable promissory note for the premium. If he had read the application and policy, he would have discovered the character and terms of the policy, and the falsity of Wood's representation. He laid the policy away, and did not examine or read it until some six weeks afterwards, when, upon reading it, he discovered that its terms and conditions were materially different from what they had been represented to be by Wood. He thereupon promptly returned the policy to the defendant, with the request that it be canceled and his note returned; as-

signing as the reason for his request the false representations made by Wood.

The defendant refused to cancel the policy or return the note, but shortly after sold and transferred the note to a third party, who brought suit on it, in which he established that he was an innocent indorsee for value before maturity, and consequently recovered judgment for the amount, which plaintiff was compelled to pay. Plaintiff thereupon brought this action to recover the amount of the note which he had been thus compelled to pay. It may be added that, if the terms and conditions of the policy had been as represented by Wood, it would have been apparent, on reflection, to any intelligent business man, that the scheme was so unsound financially that no insurance company could conduct business according to it and long continue solvent. Plaintiff was a railroad conductor, without any special knowledge of the business of life insurance.

It is apparent that plaintiff has proceeded with a view of rescinding the contract, and no question is raised by the defendant as to the propriety and sufficiency of the course pursued, if, upon the facts, plaintiff had the right to rescind at all at the time he attempted to do so. While subdivided in the brief into different heads, all the points, save one, urged by defendant's counsel, may be summoned up in one, viz., that there was no evidence to support the verdict, which was for the plaintiff. It was stipulated in the application, which was made part of the policy, that

"No statements, promises, or information made or given by, or to, the person soliciting or taking this application for a policy, or by or to any other person, shall be binding on the company, or in any manner affect its rights, unless such statements, promises or information be reduced to writing, and presented to the officers of the company at the home office, in this application."

Counsel's contention is that this clause is applicable to this case, and hence the false representations of Wood, even if made, are wholly irrelevant and immaterial; and he cites in support of this proposition New York Life Ins. Co. v. Fletcher, 117 U. S. 519, 6 Sup. Ct. 837. The learned counsel has, however, failed to observe that that was an action upon the contract, to recover upon the

policy, and that, in its opinion, the court expressly recognizes that the fraud of the agent who obtained the application would have been a good ground for rescission by canceling the policy and returning the premiums.

Counsel's second contention is that, even if plaintiff had originally a right to rescind, he had lost it by his subsequent conduct in retaining the policy an unreasonable length of time before discovering the difference between the policy as it was and as it had been represented to be by Wood. It is not claimed that there was any unreasonable delay after plaintiff actually discovered the fraud, but the claim is that, if he had exercised reasonable diligence in examining his policy, he would have discovered it much sooner. The rule, as generally laid down in the books, is that the right of rescission accrues only after discovery of the fraud, and that delay is not imputable against the party defrauded, until he makes that discovery. But we have no doubt that there may be cases where the party is so grossly negligent in failing to use means of knowledge within his possession, which he was bound to avail himself of, that delay would be imputable to him, even before he actually discovered the fraud. Hence perhaps a more accurate statement of the rule is that delay is not imputable to the party defrauded until he has sufficient knowledge of the fraud to make the delay material, or such means of knowledge as he was bound to avail himself of. Leake, Cont. 394; Browne v. McClintock, L. R. 6 H. L. 456.

As in the case of alleged negligence, the evidence may be so conclusive as to render the question one of law, as to whether the party attempted to rescind within a reasonable time after he discovered the fraud, or after he was bound to discover it; but ordinarily this would be a question of fact for the jury. This would be so even where there is no dispute as to the evidentiary facts, if different minds might reasonably differ as to the conclusion to be drawn from them. We are of opinion that upon the whole evidence this was a question for the jury in this case.

The third contention is that the evidence of fraud (that is, evidence that Wood made the false representations alleged) was insufficient; the claim being that, in order to justify the rescission of a

written contract on the ground of fraud, the evidence must be of the same clear and satisfactory character required to entitle a party to a reformation of a written instrument on the ground of fraud or mistake. We are not aware of any rule requiring mistake of fact or fraud, as a ground for rescission, to be established by any more or different evidence than is required to prove the same facts in other cases. See Martin v. Hill, 41 Minn. 337, 43 N. W. 337. In fact, we do not think any hard and fast rule should be adopted in cases either for the rescission or the reformation of written contracts. In both cases due regard should be given to the fact that the written instrument purports to be a formal and solemn statement of the terms of the agreement of the parties, but every case must depend largely upon its own facts. In this case the plaintiff testified positively that the agent did make the representations alleged, in which he was, to a certain extent, corroborated by other evidence. On the other hand, the agent testified as positively that he never made any such representations. Without rehearsing all the evidence, we think it made a case for the jury.

The next contention is that, if plaintiff was deceived by the representations of the agent, it was the result of his own folly or negligence, for, if he had taken the least pains to examine or read the application when he signed it, or the policy when he accepted it, he could and would have readily discovered the falsity of the representations. If there is anything well settled by the decisions of this and other courts, it is that, as between the original parties to a contract, one who has intentionally deceived the other to his prejudice is not to be heard to say, in defense of the charge of fraud, that the innocent party ought not to have trusted him. It does not lie in the mouth of the party guilty of making the false representations to say to the other party, "You were a fool, or negligent, in believing and relying upon my statements."

The last point made by counsel for the defendant is that the plaintiff's only remedy was an action for deceit, to recover damages; that there could be no rescission, because the parties could not be placed in statu quo, for the reason that the policy had already run six weeks, during which the plaintiff was insured. Whether the defendant was not entitled to deduct from the amount

of the premium paid a sum equal to the premium for the time the policy had run, it is unnecessary to consider, as no such claim was made in the pleadings, or even suggested on the trial. It seems to us that the allowance of such a credit would have placed the parties substantially in statu quo, within the meaning of the law.

While the general rule is that a contract cannot be rescinded by one party, unless both parties can be placed in the same relation and stand upon the same terms as existed when the contract was made, yet to this rule there are exceptions. The principle upon which the rule rests is that, where the parties cannot be placed in statu quo, a rescission by one party would give him an unfair advantage over the other. But this does not apply where the inability to place a party in his former position is caused by his own fraud. Hence, where the right to rescind springs from subsequently discovered fraud, the defrauded party does not lose his right to rescind because the contract has been partly executed, and the parties cannot be fully restored to their former position. Where one party has thus by fraud obtained an unconscionable advantage over another, and a rescission would be in furtherance of justice, a rescission may still be had, and the equities of the parties arising out of the rescission enforced, although they cannot be in all respects fully restored to their former condition. Coffee v. Ruffin, 4 Cold. 487; Downer v. Smith, 32 Vt. 1; Conlan v. Roemer, 52 N. J. L. 53, 18 Atl. 858; Hammond v. Pennock, 61 N. Y. 145.

Order affirmed.