## John H. Savage, Administrator, Appellee, v. Chicago & Joliet Railway Company, Appellant.

### Gen. No. 5,022.

1. STREET CROSSINGS—*degree of care required of traction companies at.* It is incumbent upon those in control of a street car to exercise a greater degree of care and watchfulness at street crossings than at other places along the route.

2. APPEALS AND ERRORS—*when admission of particular evidence not subject to review.* In the absence of an exception, the admission of evidence is not subject to review.

3. MEASURE OF DAMAGES—*when instruction as to, in action for personal injuries, proper.* An instruction given in an action for personal injuries conducted by the personal representative of the deceased injured party, held proper, which told the jury that in determining the amount of damages the plaintiff would be entitled to recover, if any, the jury might take into consideration all the facts, the nature and extent of the deceased's physical injuries resulting from the injury, if any, his suffering in body and mind up to the time of his death, loss of health, if any, his loss of time and inability to work, if any, on account of such injuries, and find such sum as in the judgment of the jury, under the evidence, would be a fair compensation for the injury sustained, if any, less the sum paid him, if any, by the defendant for such injuries, etc.

4. RELEASE—*when does not bar action for personal injuries.* Held, that the release interposed as a defense in this action, did not bar a recovery in view of the manner in which it was obtained, namely, through an interpreter, under circumstances which justified the inference that its execution was made without full understanding of the effect.

5. VERDICT—*when not excessive.* Held, that a verdict for $3,000, after being reduced by *remittitur* to $1,500, in an action for personal injuries, was not excessive where it appeared that the person injured sustained as a result of the accident a fracture of the skull bone and clavicle, causing some mental disturbance and disability to work, etc.

Savage v. Chicago & Joliet Ry. Co., 142 App. 342.

Action in case for personal injuries. Appeal from the Circuit Court of Will county; the Hon. ALBERT O. MARSHALL, Judge, presiding. Heard in this court at the April term, 1908. Affirmed. Opinion filed August 10, 1908.

E. MEERS, for appellant.

BARR, BARR & BARR, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

Rockdale is a village of about 950 inhabitants, three miles southwest of Joliet, Will county, Illinois. Moen avenue, its main street, runs east and west, and is intersected by Midland avenue. .Street cars operated by appellant, the Chicago & Joliet Railway Company, from Rockdale to Joliet, run along Moen avenue, and the corner of Moen and Midland avenues is the most used street corner in Rockdale. About eleven o'clock P. M. on April 15, 1907, Dominick Blasinouski came out of a saloon at the corner of Moen and Midland avenues, started to cross Moen avenue, and was struck by a car of appellant running east, and thereby sustained injuries, to recover for which he brought this suit in the Circuit Court of said county. On July 26, 1907, he filed a declaration containing two counts. The first count averred, that while he, in the exercise of due care, was in the act of crossing appellant's street railway track at or near the intersection of Midland avenue, appellant, by its servants, so negligently drove and managed the car that it struck and permanently injured him. The second count averred that the car was operated at a reckless and dangerous rate of speed in the night time, and that no gong or bell was sounded, and that on account of the dangerous and negligent rate of speed, the car struck him, fracturing his skull and clavicle. In January, 1908, Blasinouski died. On February 13, 1908, appellee, John H. Savage, was appointed administrator of his estate, and the same day Blasinouski's death was suggested of record, and Sav-

age was substituted as plaintiff. The title was amended and the case afterwards proceeded to trial on the original declaration and appellant's plea of not guilty. There was a verdict for appellee for $3,000. A motion for a new trial was made. The court required a *remittitur* of $1,500, which was made, and the motion for a new trial was denied. Judgment was entered on the verdict, and the company prosecutes this appeal.

Appellee's proof was, that the car that struck deceased was running from twelve to fifteen miles per hour, while appellant's motorman testified that its speed was from eight to twelve miles per hour, and the conductor, that it was twelve miles per hour. There was no light at the street crossing, and the evidence was conflicting as to whether a bell or gong was sounded as the car approached the crossing. The evidence is undisputed that one Joseph Lowery stood at the crossing, within three feet of the rails of the car line, and signaled the car to stop as it approached. While he was attempting to attract the attention of the motorman, deceased came out of a saloon on the corner, ran across the street, and was struck by the car and thrown some distance. One witness for appellee testified that deceased was picked up fifty or sixty feet from the crossing; another that he was thrown over fifty feet east of the crossing, and twenty-three feet from the north rail. Appellant's motorman testified that the man lay twenty or twenty-five feet from the east line of Midland avenue after he was struck, and seven or eight feet from the car track, and the conductor testified that he lay seven or eight feet from the car track. The evidence is conflicting as to the distance the car ran after it struck deceased. Two witnesses for appellee testified that it ran 200 feet, or half a block. Appellant's motorman testified that it ran a car length, and the conductor said two or three car lengths. Blasinouski died in January, 1908, of pneumonia, not a result of the accident.

It is incumbent upon those in control of a street car to exercise a greater degree of care and watchfulness at street crossings than at other places along the route. West Chicago Street Railroad Co. v. McCallum, 169 Ill. 240; Chicago Railway Co. v. Robinson, 127 *id.* 9. "Drivers, gripmen and motormen of street cars are obliged at all times to exercise a reasonable care in the conduct of their cars, but the requirement of reasonable care imposes upon them more exacting attention when they approach street crossings, where vehicles and pedestrians may always be expected in front of them. 'The failure under such circumstances to ring the bell, sound the gong, or give other proper warning * * * is undoubtedly evidence of negligence, to be submitted to a jury under all the circumstances,' whether there is an ordinance requiring such precautions or not. The increase of danger to the public at such crossings demands a corresponding increase of vigilance and energy on the part of such drivers, gripmen, and motormen. They ought to notice whether or not the track is clear when they approach such public crossings, and sound the gong as a warning." Chicago City Ry. Co. v. Tuohy, 196 Ill. 410.

It is true that the motorman and conductor contradicted appellee's witnesses, and the motorman's testimony tended to show that the car was not proceeding at an unusual rate of speed, and that the gong was sounded, and that there was a light on the head of the car, and that deceased jumped in front of the car. Whether the witnesses for appellee were more worthy of credit than those of appellant was a matter for the jury to decide. If the jury believed that the car which injured deceased was proceeding across Midland avenue at its intersection with Moen avenue, at an unreasonable and dangerous rate of speed, without giving any signal of warning to those crossing the street at that point, and if the jury further believed that under all the circumstances the motorman saw, or ought to

have seen, the deceased approaching the track, and if he had kept a proper lookout could have avoided striking him, then their verdict was correct. We are of the opinion that the evidence fully supports the verdict.

Appellant complains that incompetent evidence was admitted. It appears that one witness testified that deceased was married, and had four children. There was no objection to this evidence, and it was afterwards excluded on motion of appellant with the consent of appellee. As no exception was taken, appellant's argument does not raise the question for our consideration.

Complaint is made of the measure of recovery laid down by the court. On this question, the court told the jury, if they found for appellee, they would be required in determining the amount of damages appellee would be entitled to recover, if any, to take into consideration all the facts, the nature and extent of deceased's physical injuries resulting from the injury if any, his suffering in body and mind up to the time of his death, loss of health, if any, his loss of time and inability to work, if any, on account of such injuries, and find for him such sum as in their judgment under the evidence would be a fair compensation for the injuries sustained, if any, less the sum paid him, if any, by appellant for such injuries, but that appellant could not recover in this suit for the death of deceased, but only damages up to the time of his death. The proof is clear that deceased did not die from the injuries resulting from the accident, and we think his pain and suffering, in mind and body, loss of health, loss of time, and inability to work were proper elements of appellee's recovery, and the instruction laid down the true measure of recovery. In City of Joliet v. Conway, 119 Ill. 489, the court referring to a similar instruction said: "In this case there is no attempt to show that the family were dependent upon the plaintiff for support, care or maintenance, and the jury, we think, could not have so understood it, especially in view of

the fact that the instruction expressly limits the right of recovery to such damages as resulted to the plaintiff alone.'' We are of the opinion that in view of the foregoing instruction, the jury could not have been misled into assessing any damages except such as appellee's intestate would have been entitled to recover had he survived.

Appellant complains that the court did not instruct the jury that there could be no recovery providing the death of Blasinouski was caused by the accident in question. The record does not show that appellant requested the court so to instruct the jury, but the fact is that this principle was properly presented to them in appellee's instruction last considered.

If deceased had died from the injuries, then an amendment of the declaration alleging injury to the widow and next of kin would have been necessary before a recovery could have been had. Deceased dying from a cause not a result of the injuries, the action survived to the administrator to recover what deceased might have recovered had he lived until the trial.

On May 16, 1907, while Blasinouski was in the hospital to which he was taken when injured, appellant's superintendent, William H. Huen, accompanied by the attending physician of deceased, who was in the employ of appellant, and an interpreter, visited him, paid him $50 and agreed to pay his doctor's and hospital bill, and obtained from him a release from all damages resulting from the accident. This release was negotiated through an interpreter, and it is doubtful whether deceased was mentally capable at the time of understandingly entering into such an agreement. It is plain that the superintendent and the physician did not understand what was said by deceased and the interpreter, as the interpreter talked to deceased in the Russian language. There is the testimony of a number of witnesses who had known deceased for a long time, that he did not speak nor understand Russian, but only

Lithuanian. The superintendent admitted that the release, aside from signing, was all written in his office before he went to the hospital. The jury doubted the *bona fides* of this transaction, and by their verdict practically condemned such conduct of appellant through its agents, and we think properly.

Deceased was injured on April 15, 1907, and died in January, 1908. He spent over four weeks in the hospital, and for nearly two weeks of that time he was in a semi-conscious condition. He had a fracture of the skull bone and clavicle, and showed some indications of mental disturbance, and during all the time he lived after the injury he was unable to work. The trial court deemed $1,500 not unreasonable compensation for his injuries, and we do not consider it excessive.

Finding no error in the record, the judgment of the trial court is affirmed.

*Affirmed.*