## HENRY O. JOHNSON v. OLE H. OLSEN.[1]

### July 14, 1916.

### Nos. 19,818—(202).

**Contract — rescission — false representations as to material facts.**

1. Certain representations made to induce and bring about the contract involved in the action held to have been representations as to material facts, and that the falsity thereof was a sufficient basis for the rescission of the contract.

[1] Reported in 158 N. W. 805.

Findings — evidence.
    2. Findings of the trial court *held* sustained by the evidence.

Action in the district court for Washington county to recover $10,-272.79 for breach of contract. The answer among other matters set up the change in the kind of steel sash made by the state architect, and alleged that defendant was wholly ignorant that by the change double glazing was eliminated until about August 7, 1910, but that plaintiff, who was engaged in selling Fenestra sash in competition with Kahn sash, well knew at the time of substitution that the change wholly eliminated double glazing; that defendant had no knowledge or experience with the work or cost of double glazing in steel sash; that plaintiff falsely stated to defendant that double glazing required special experience and skill and plaintiff had control of the only persons who could be procured to do the work in this part of the country. The case was tried before Stolberg, J., who made findings and dismissed the action on the merits. Plaintiff's motion for amended findings was denied, Nethaway, J. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*A. B. Darelius,* for appellant.
*George H. Sullivan,* for respondent.

BROWN, C. J.

Defendant was awarded the contract for the construction of the new State Prison at Stillwater. The plans and specifications for the structure, prepared by the state architect, were minute and specific, and in part called for certain steel window sash, known as Fenestra sash, a large portion of which was to be double glazed. Performance of the contract was under the superintendence of the architect, and the plans and specifications reserved in him the right of modification in such respects as he might determine from time to time. The entire contract was a large undertaking, and defendant sought to sublet distinct parts thereof to other contractors. He invited bids for all the window glass to be used in the building, delivered and set in the sash on the premises. Plaintiff, in response to this invitation, offered to furnish all such glass, set in the sash and "double glazed where called for," for the sum of $13,850. The bid was taken up and considered at a conference of the parties on July

29, 1910, and accepted by defendant on that day. For a time prior to this bid and the acceptance thereof, the architect had under consideration the question of the propriety of a change in the kind of window sash to be used in the building, and had reached the conclusion and ordered that a sash known as Kahn sash be substituted for the Fenestra sash. The Fenestra sash were moulded and shaped especially for double glazing, but the Kahn sash were not so constructed, and the substitution of the latter for the former necessarily eliminated all double glazing. This the architect had authority to order, and on August 5, the week following the acceptance of plaintiff's bid, he notified defendant that "all sash will be single glazed, and that double glazing will be omitted." On August 8 defendant notified plaintiff of this change, and in the letter of notification formally canceled the contract with plaintiff, which was founded in part upon the theory of double glazing, and requested plaintiff to submit a new proposition on the basis of single glazing only. Plaintiff submitted no new proposition, and rested upon the claim that his former offer and the acceptance thereof by defendant constituted a valid and binding contract, with the terms of which he was content. Prior to this notification he had obtained an offer from a third person to furnish the glass covered by his contract, for a price about $3,000 less than plaintiff was to receive from defendant, which amount, had the contract been performed, would have represented plaintiff's profit. Defendant declined further to recognize the contract, claiming that the change in the plans by the architect, and the fraudulent representations presently to be referred to, furnished a sufficient reason for the cancelation thereof, and for this reason plaintiff was not permitted to perform. Thereafter plaintiff brought this action to recover the profit alleged to have been lost by the act of the defendant in preventing a performance. The trial below was before the court without a jury, and findings of fact were duly made, and judgment on the merits of the action was awarded to defendant. Plaintiff appealed from an order denying a new trial.

Appellant presents a large number of assignments of error, but the conclusion we have reached upon the main issue in the case renders a consideration of those not pertinent to that branch of the case unnecessary.

Defendant among other things pleaded in defense to the action that

the contract with plaintiff, that is, defendant's acceptance of plaintiff's offer or proposal to furnish the glass and do the glazing for a stated amount, was procured by plaintiff through and by means of certain false and fraudulent representations. The trial court sustained this defense and found the facts accordingly. The turning point in the case is whether the findings are sustained by the evidence. We answer the question in the affirmative. It appears without dispute that plaintiff, at the time in question, was the agent or representative in Minnesota of the manufacturer of the Fenestra sash and interested in having the sash adopted for the building; that sash was specified in the plans and specifications, and plaintiff was active in efforts to have it retained by the architect. But the change was made; and his company thereby lost the right to furnish the sash. Plaintiff knew of this change before he submitted his offer to defendant. Defendant also knew of the change, but did not know that the change necessarily eliminated double glazing, and, in his subsequent dealings with plaintiff and in the acceptance of plaintiff's offer, defendant proceeded and acted on the theory that the double glazing feature was still in force and an element of the main building contract. Now, the court found that, to induce defendant to accept his offer for this branch of the contract, plaintiff represented that he, plaintiff, had an option from the Pittsburgh Plate Glass Company for glass, which option would expire the following day; that the glass was advancing in price, and that he was the only one who knew how to do double glazing, and that the glazing in the Kahn sash was the same as in the Fenestra sash. The court also found that defendant relied upon the representations and was induced thereby to accept plaintiff's proposal; that the representations were false and untrue. Upon learning of the falsity of the representations, and of the fact that double glazing had been wholly eliminated by the order of the architect, defendant promptly rescinded the contract with plaintiff. In the meantime, as found by the trial court, plaintiff incurred no cost or expense in preparation for the performance of the contract, and no evidence was presented of actual loss or damage on his part.

It is clear that the representations so made by plaintiff, at least those to the effect that the Kahn sash could be double glazed, and that the glazing thereof would be the same as that called for by the contract as to

the Fenestra sash, were statements of material facts and not mere "trade talk" as contended by counsel for plaintiff. It is also clear that the findings of the court that the representations were not true are sustained by the evidence; and further, taking the evidence as a whole, the trial court was justified in finding that plaintiff knew at the time he procured the contract from defendant that double glazing, by the substitution of the Kahn for the Fenestra sash, had been wholly eliminated. Defendant did not know that fact, until he was so advised by the architect after the acceptance of plaintiff's proposal. That the fact so represented was material is manifest. Double glazing means two panes of glass set in each section of the window sash instead of one. Defendant knew nothing about the feature of double glazing, and it is beyond question that the expense thereof would greatly exceed single glazing. Defendant accepted plaintiff's proposal on the theory of double glazing. This fact conclusively appears from changes and alterations made by him in plaintiff's proposal, and by retaining therein a provision for "double glazing where called for." From these facts it is obvious that the feature of double glazing formed an important element in the transaction with plaintiff, at least from defendant's standpoint, and, the representations in respect thereto being material, the falsity thereof justified defendant in rescinding the contract. 1 Dunnell, Minn. Dig. § 3819; Drake v. Fairmont Drain Tile & Brick Co. 129 Minn. 145, 151 N. W. 914; Bullitt v. Farrar, 42 Minn. 8, 43 N. W. 566, 6 L.R.A. 149, 18 Am. St. 485. It is quite probable that some of the other matters contained in the representations as found by the trial court, were not material, but, in respect to the character of the work to be performed under plaintiff's proposal, they were material and important, and the trial court properly upheld defendant's right of rescission for the falsity thereof. An affirmative showing of damage to defendant was not necessary. MacLaren v. Cochran, 44 Minn. 255, 46 N. W. 408. In view of this conclusion it becomes unnecessary to treat in detail the assignments of error made the basis for the motion for a new trial. We have considered them, however, and discovered no error of a character to justify a new trial of the action.

Order affirmed.